# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ANDREW RODRIGUEZ** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-0034(HHK)** |
| | ) | **(ECF)** |
| **BUREAU OF PRISONS,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Defendant, respectfully moves to dismiss the above-captioned action pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the Plaintiff has failed to state a claim upon which relief can be granted and  pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. The Defendant further submits that if the Court finds the Plaintiff has stated a proper cause of action, it is entitled to summary judgment under Rule 56.

In support of this motion, the Court is respectfully referred to the accompanying Memorandum of Points and Authorities, Statement of Material facts As To Which There is No Genuine Dispute and exhibits.

1

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


_____
RUDOLPH C. CONTRERAS, D.C. Bar #  434122
Assistant United States Attorney


_____
BENTON G. PETERSON, WI. Bar #1029849
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 514-7238

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **ANDREW RODRIGUEZ** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 06-0034(HHK)** |
| | ) | **(ECF)** |
| **BUREAU OF PRISONS,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**FEDERAL DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Andrew Rodriguez, Register Number 38020-054, is a thirty-six (36) year old White Male, who is currently serving a federal sentence of two hundred and forty months (240) followed by three years supervised release.  The Plaintiff was sentenced on July 20, 1998, in the United States District Court for the Southern District of New York for conspiracy to distribute cocaine base in violation of 21 U.S.C. § 812, 841 (A)(1), 841(B)(1)( c) & 846.

The Plaintiff is currently housed at the Federal Correctional Institution (FCI) Elkton, in Ohio.  The Plaintiff is a *pro se* inmate who filed a complaint under the accuracy provision of the Privacy Act, 5 U.S.C. §552a(e)(5).  The Plaintiff contends that the BOP erroneously assigned him a Public Safety Factor (PSF)[1] of greatest severity.  The Plaintiff also contends that BOP

_____

[1]  BOP policy defines the Public Safety Factors in the following manner:

demonstrated behaviors which require increased security measures
to ensure the protection of society.  There are nine Public Safety

policy states that the PSF of greatest severity is only applicable to the leader of an organization who "[r]eceives the largest profit and has the greatest decision-making authority."  Complaint at ¶ 9.  The Plaintiff further contends that his Presentence Investigation Report (PSR) reflects that he was a manager who reported to the leaders of the organization.  Id.  In addition, Plaintiff states that his record does not show that he was a leader or that he earned the largest profit or that he had the greatest decision-making authority as he contends is required by BOP policy to have a "Greatest Severity" PSF.  Id. at ¶ 7-9.  As a result, Plaintiff argues that BOP erroneously applied the PSF of "Greatest Severity" to him.  Id. at ¶ 9.

Plaintiff states that the maintenance of the allegedly inaccurate records regarding his custody classification violates his rights under the Privacy Act.  Plaintiff seeks an order to compel the BOP to correct the record and delete the "Greatest Severity" PSF, a claim that can be construed under the amendment provision of the Privacy Act.  Complaint at ¶ 12.  Plaintiff also seeks to compel the BOP to pay him fifteen thousand dollars ($15,000) for the alleged violation of his rights under the Privacy Act.  Id. at ¶ 13.

The Defendant has exempted the records at issue from the amendment and accuracy provisions of the Privacy Act.  Thus, the Plaintiff does not have a cause of action to seek the amendment of this record under the Privacy Act, to seek damages as a result of the alleged failure

---

Factors (PSFs) which are applied to inmates who are not appropriate for placement at an institution which would permit inmate access to the community (i.e., MINIMUM security).  The application of a PSF overrides security point scores to ensure the appropriate security level is assigned to an inmate, based on his or her demonstrated current or prior behavior.

See Attachment A:  Program Statement 5100.07, Security Designation and Custody Classification Manual, Chapter 2, page 5.

to maintain the records accurately or to seek relief against Defendant for the allegedly erroneous classification.

## I.  THE BOP HAS THE AUTHORITY TO EXEMPT RECORDS FROM PROVISIONS OF THE PRIVACY ACT

The Privacy Act ("Act") applies to documents maintained in a system of records.  A system of records is defined by the Act as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual."  5 U.S.C.A. §552a (a)(5).  The Inmate Central File (ICF)[2] maintained by the BOP is a system of records within the definition found in the Privacy Act.

The ICFs are maintained by the inmates' names and register numbers.  The Plaintiff's custody classification is a document prepared by the inmate's case manager for housing purposes and is maintained in the ICF.  See Attachment B:  Program Statement 5800.11, Inmate Central File, Privacy Folder and Parole Mini-Files, page 7, 9b(7) (listing the records maintained in section two of the ICF which include the custody classification form).

The Privacy Act confers upon agencies the discretion to exempt records from different provisions of the Act within the limitations included in the statute.  The Act specifically states:

> j.  The head of any agency may promulgate rules, in accordance with the requirements (including general notice) of sections 553 (b)(1), (2) and (3),( c ), and (e) of this title, to exempt any system of records within the agency from any

---

[2] ICF is a six-position file prepared for sentenced inmates in custody and contains records divided in the following categories: (1) Sentence Data/Detainers/IFRP; (2) Classification/ Parole Material; (3) Mail, Visits, and Property, etc.; (4) Conduct, Work and Quarters Reports; (5) Release Processing; (6) General Correspondence.  See Attachment B:  Program Statement 5800.11, Inmate Central File, Privacy Folder, and Parole Mini-Files, CN-01 page 4-5, section e (December 31, 1997).

3

part of this section except subsections (b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i), if the system of records is:

(2)    maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including . . . correctional, probation, pardon, or parole authorities, and which consists of . . . *(A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status; (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or ( C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.*

5 U.S.C. § 552a(j)(2) (emphasis added).  The agency's exemption authority is limited to those sections excluded from 552a(j).  The BOP is an agency within the meaning of the statute with the authority to exempt records from certain provisions of the Privacy Act.  Pursuant to 552a(j), the BOP has exempted a number of its records from the amendment and accuracy provisions in 552a(d) and (e)(5), respectively.  These exemptions have been codified in the Code of Federal Regulations. 28 C.F.R. § 16.97 (a) and (j).

A.    **The BOP has exempted the ICF from the Amendment Provision of the Privacy Act**

Although in his complaint the Plaintiff only mentions section 552a(e)(5), which is the accuracy provision of the Privacy Act, the Plaintiff also requests that the BOP correct the record (Complaint ¶ 12) thereby appearing to raise a claim under 552a(d), the amendment provision of the Privacy Act. Thus, the amendment provision will also be addressed.

The BOP has exempted the ICF, which is a BOP system of record, from the amendment provision of the Privacy Act.  See Fendler v. United States Bureau of Prisons, 846 F.2d 550 (9th Cir.1988) (discussing the BOP's discretion to exempt records from the amendment provision of

4

the Privacy Act);  Meyer v. Federal Bureau of Prisons, 940 F.Supp. 9 (D.D.C., 1996)(same);

Doyon, supra (same).  The Plaintiff's custody classification is documented and maintained in the

ICF.  The ICF, thus the Plaintiff's custody classification, is exempted from the amendment

provisions found in 5 U.S.C. §552a(d).  See 28 C.F.R. § 16.97(a) (stating "[t]he following

systems of records are exempt from 5 U.S.C. (d) . . . and . . .  (g):  . . . (4) Inmate Central Record

System.").  See also §552a(d) ("Each agency that maintains a system of records shall – (2) permit

the individual to request amendment of a record pertaining to him  . . . ").

The ICF is also exempted from 552a(g), which refers to civil remedies.  Thus, an

individual cannot seek an amendment to his or her ICF through the Privacy Act, and is not

entitled to any civil remedies, including monetary awards of the kind sought by this Plaintiff.

Moreover, the BOP does not have a duty to amend records maintained in its ICF.  Miller

v. BOP, 1997 WL 135713 (D.D.C. 1997).  The BOP has been entrusted with the administration

of the federal correctional system.  As a result, the BOP is charged with the classification and

treatment of prisoners.  See 18 U.S.C. § 4081 (which reads that ". . . the proper classification and

segregation of Federal prisoners [is done] according to the nature of the offenses committed, the

character and mental condition of the prisoners, and such other factors as should be considered in

providing an individualized system of discipline, care, and treatment of the persons committed in

such institutions.").  Classification decisions are clearly within the realm of matters left to the

unfettered discretion of the Bureau of Prisons.  The Supreme Court has repeatedly held that

prison officials have broad administrative and discretionary authority over the institutions they

manage.  Hewitt v. Helms, 459 U.S. 460, 467 (1983).  Courts should not be too ready to exercise

oversight and put aside the judgment of prison administrators.  Wolff v. McDonnell, 418 U.S.

539, 566 (1974); <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976).

Moreover, inmates in the custody of the BOP do not have a right to a specific custody classification. <u>Beard v. Livesay</u>, 798 F.2d 874 (6th Cir. 1986). <u>See also</u> <u>Slezak v. Evatt</u>, 21 F.3d 590 (4th Cir.), <u>cert. denied</u>, 115 S.Ct. 235 (1994) (inmates have no liberty interest in custody classification); <u>Marchesani v. McCune</u>, 531 F.2d 459 (10th Cir.), <u>cert denied</u>, 429 U.S. 846 (1976)(inmates have neither protected liberty interests nor property interests in custodial classification); <u>Wilson v. Budney</u>, 976 F.2d 957 (5th Cir. 1992), citing <u>Moody  v.  Baker</u>, 857 F.2d 256, 257-58 (5th Cir.), <u>cert. denied</u>, 488 U.S. 985 (1988)(same); <u>Neals v. Norwood</u>, 59 F.3d 530 (5th Cir. 1995)(the inmate's disagreement with the classification is insufficient to establish a constitutional violation).  Clearly, the Plaintiff does not have a cause of action under 552a(g), the enforcement provision of section (d).

**B.      The BOP has exempted the ICF from the Accuracy Provision of the Privacy Act**

The Plaintiff in this case asserts that the BOP has maintained inaccurate records of his custody classification as he alleges it is based on the BOP's alleged misunderstanding of the Plaintiff's PSR.  The Plaintiff contends that he was only a manager within the drug organization and not a leader, and that, according to BOP policy, leaders are the only ones to receive a PSF of "Greatest severity."  Plaintiff's complaint ¶¶ 7-9, 12.  Thus, Plaintiff concludes that BOP's custody classification is incorrect.

The Privacy Act's accuracy provision, 5 U.S.C. § 552a(e)(5), was enacted to ensure that agencies of the federal government maintain accurate records.  The accuracy provision requires an agency to maintain all records that it uses in making a determination regarding an individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure

fairness to the individual in the determination. 5 U.S.C. § 552a(e)(5).

The Privacy Act allows an agency which has as its principal function "any activity pertaining to the enforcement of criminal laws," to exempt itself from the accuracy provision with regard to "reports identifiable to an individual compiled at any state of the process of enforcement of the criminal laws from arrest or indictment through release from supervision." 5 U.S.C. § 552a(j)(2).

In 2002, the ICF was also exempted pursuant to 5 U.S.C. § 552a(j) from claims brought under subsections (e)(1) and (e)(5) of the Privacy Act. 67 Fed. Reg. 51,755-01, 51,754-01 (Effective August 9, 2002) (codified at 28 C.F.R. § 16.97(j)). The exemption is justified because:

> . . . in the collection and maintenance of information for law enforcement purposes, it is impossible to determine in advance what information is accurate, relevant, timely and complete. . . . The restrictions of subsection (e)(5) would restrict and delay trained correctional managers from timely exercising their judgment in managing the inmate population and providing for the safety and security of the prisons and the public.

28 C.F.R. § 16.97(k)(2). The BOP has exempted a number of records, including the ICF, from the accuracy provision of the Privacy Act found at 5 U.S.C. §§ 552a(e)(5). Consequently, Plaintiff has no actionable claim under 5 U.S.C. § 552a(g)(1), allowing for damages based on the accuracy provisions. See Smith v. BOP, 1996 WL 43556 (D.D.C.) (stating that civil remedies under the Privacy Act were available as the agency did not exempt its records from (e)(5)). The Plaintiff's custody classification form is exempt from the Privacy Act claims brought by the plaintiff, and the Court should dismiss the complaint under FRCP 12(b)(1) for lack of jurisdiction.

7

## II.  PLAINTIFF FAILS TO ESTABLISH A CAUSE OF ACTION UNDER THE PRIVACY ACT

The Plaintiff does not have a cause of action under the Privacy Act, as the BOP has specifically exempted the ICF, and thus his custody classification form, from the amendment and accuracy provisions of the Privacy Act.  However, even if the Plaintiff had a cause of action under the Privacy Act, he would fail to establish its elements.

A plaintiff with a lawsuit against an agency under the Privacy Act has the burden of establishing the following four elements:  (1) that there was an adverse determination; (2) that the agency failed to maintain plaintiff's records with the degree of accuracy necessary to ensure fairness in the determination made;  (3) that the agency's failure to do so was the proximate cause of the adverse determination, and (4) that the agency acted intentionally and willfully. Armstrong  v. United States Bureau of Prisons, 976 F.Supp. 17, 22, aff'd 1998 WL 65543 (1997).

### A.    The Plaintiff has not been adversely affected by his custody classification

The Plaintiff complains he was assigned a PSF of "Greatest severity" but does not state how, if at all,  this PSF adversely affected him.  Plaintiff only makes the conclusory statement that his rights under the Privacy Act have been violated.  Complaint, ¶ 10.

To prevail on an accuracy claim, the Plaintiff must show not only that the information in his custody classification form was incorrect, but that the maintenance of the custody classification form in his inmate file proximately caused an adverse decision concerning him. The Privacy Act does not define what would constitute an adverse determination.  However, this Circuit has stated that an adverse determination within the prison context denotes "a decision that

negatively 'affects an inmate right.'"  Toolasprashad v. Bureau of Prisons, 286 F.3d 576, 584 (D.C.Cir. 2002).

The Plaintiff was not adversely affected by the custody classification of "Greatest Severity."  Clearly, the Plaintiff, as an inmate in federal custody, has no right to a particular classification or a particular institution.  See Sandin v. Conner, 515 U.S. 472 (1995); Olim v. Wakinekona, 461 U.S. 238, 245 (1983).  The Plaintiff therefore cannot demonstrate that BOP's decision to assign him to a particular classification has negatively affected his 'right' to a different classification.  In light of these reasons, the Plaintiff has failed to state a valid cause of action under which relief can be granted.

**B.      The BOP maintained records of the Plaintiff with the degree of accuracy necessary to assure fairness in the determination made**

The Plaintiff asserts that he was given the wrong PSF of "Greatest Severity" as according to PS 5100.07, Appendix G, page 1, BOP policy that requires that he be a "leader" "who receives the largest share of the profits and has the greatest decision-making authority." Complaint ¶ 9.

The Privacy Act imposes a number of requirements on agencies maintaining systems of records.  5 U.S.C. § 552a(e).  Among those requirements is the maintenance of records "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."  5 U.S.C. §552a(e)(5).  As explained above, the BOP has exempted the ICF from this Provision.  Thus, the Plaintiff's allegations under the Privacy Act are without merit.

However, assuming *arguendo* that the Plaintiff's allegations constituted a valid claim under the Privacy Act, the Plaintiff's argument is flawed and is not supported by the policy

statement he references.  In his complaint, the Plaintiff relies on the wrong section of the program

statement in support of his proposition that BOP's custody classification is erroneous.

Complaint, ¶9.  The Plaintiff states that the BOP erroneously applied the PSF to him in spite of

the fact that he was not a leader.  The Plaintiff "believes" that "Greatest Severity" PSF can only

be applied to a leader of an organization,  Id. at ¶7, and relies on Program statement 5100.07,

Appendix G.

BOP policy explains the applicability of the PSF of "Greatest Severity" as follows:

> Any **drug offender** whose current offense includes the following
> criteria shall be scored in the Greatest severity category:
> The offender was part of an organizational network and he or she
> organized or maintained ownership interest/profits from **large-
> scale** drug activity,
>
> ***AND***
>
> the drug amount equals or exceeds the amount below:
>
> . . .
>
> **Heroin or Opiates** - greater than or equal to 2,000 gm, 2 K, or 4.4 lb.

See Attachment A:  Program Statement 5100.07, Appendix B, page 1, Offense Severity Scale

(emphasis added).  The Plaintiff's PSR (¶3a) reflects that the amount of "crack/cocaine and

heroin distribution at issue was equal to more than 30 kilograms of heroin." Id.  The amount of

drugs the Plaintiff distributed exceeds the 2 kilograms threshold for receiving a greatest severity

score in the offense severity scale.

Inmates "whose term of confinement falls into the "Greatest Severity" range according to

the Offense Severity Scale (Appendix B) shall be housed in at least a Low security level

institution, unless the PSR is waived." Id. at Chapter 7, page 1, **Greatest Severity Offense**. The PSF is used to ensure appropriate security and custody classification for inmates with greatest severity offenses by alerting staff to "demonstrated behaviors which require increased security measures to ensure the protection of society." Thus, the BOP maintained Plaintiff's records accurately and his classification was properly assessed as a Greatest Severity PSF.

C.      **The BOP did not act willfully or intentionally in the alleged mis-maintenance of the Plaintiff's records**

The BOP maintained an accurate custody classification for the Plaintiff. When examining this issue this Court will first look at whether or not the agency maintained the Plaintiff's records with sufficient accuracy. Bayless v. United States Parole Commission, 1996 WL 525325, 5 (D.D.C. 1996). Assuming *arguendo* that the BOP had not maintained accurate records of the Plaintiff and violated the Privacy Act, the Plaintiff still would bear the burden of showing that such violation was willful or intentional. Andrews v. Veterans Admin. of U.S., 838 F.2d 418 (10th Cir. 1988). In so doing, the Plaintiff is required to demonstrate conduct that is greater than gross negligence. Armstrong,, at 22. "The violation must be so patently egregious and unlawful that anyone undertaking the conduct should have known it to be unlawful." Id. at 22. "An agency acts in an intentional or willful manner 'either by committing the act without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act.'" Bayless, at 6 (citation omitted).

The BOP's actions in this case do not involve the type of willful and intentional conduct required to sustain an award of damages under the Privacy Act. BOP used the information in the PSR and followed the guidelines outlined in BOP policy to complete the Plaintiff's custody

classification; thus, there was no violation to the Privacy Act.  See Armstrong, at 22 ("In fact,

defendant simply followed the BOP guidelines . . .  Accordingly, defendant's alleged conduct

described in Plaintiff's affidavit does not amount to the level of egregious and unlawful behavior

and thus does not set forth a claim under the Privacy Act for which the Court can grant relief.") .

The BOP discharged its duty to maintain accurate records of the Plaintiff.   The BOP maintained

the records in an accurate manner and did not engage in willful and intentional conduct that

would violate the Privacy Act.


## III. THE PLAINTIFF IS NOT ENTITLED TO DAMAGES UNDER THE PRIVACY ACT

In an action for damages under the Privacy Act, a plaintiff must demonstrate actual

damages.  The Plaintiff in this case has failed to demonstrate that he sustained any damages as a

result of the allegedly willful and intentional actions of the BOP which violated the Privacy Act.

As a result, the Plaintiff is not entitled to any relief, monetary, prospective, or injunctive.

The Plaintiff has not alleged that he was affected by an adverse action as a result of the

actions by BOP staff.  Even if Plaintiff had been adversely affected, an adverse action in itself

does not satisfy the mandate of the Privacy Act in an action seeking monetary damages.  Indeed,

the Privacy Act requires that in order to establish a cause of action the plaintiff must prove actual

damages.  The statute reads as follows:

> (4) In any suit brought under the Provisions of subsection (g)(1)( C )  . . .  in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of –
>
> > (A)    *actual damages* sustained by the individual as a result of the refusal or failure . . .

Section 552a(g)(4)(A) (emphasis added).  Recently, the United States Supreme Court engaged in

an analysis of the wording and legislative history of the Section and concluded that individuals

adversely affected are not by virtue of the adverse action alone automatically entitled to recovery

under the Act.  Doe v. Chao, 2004 WL 330043 (U.S.S.C. February 24, 2004).  A plaintiff seeking

recovery under the Privacy Act must also establish actual damages.  The Supreme Court

explained the scope of the damage provision as follows:

> . . . When the statute gets to the point of guaranteeing the $1,000 minimum, it not only
> has confined any eligibility to victims of adverse effects caused by intentional or willful
> actions, but has provided expressly for liability to such victims for *actual damages
> sustained.* It has made specific provision, in other words, for what a victim within the
> limited class may recover. When the very next clause of the sentence containing the
> explicit provision guarantees $1,000 to a 'person entitled to recovery,' the simplest
> reading of that phrase looks back to the immediately preceding provision for recovering
> actual damages, which is also the Act's sole provision for recovering anything (as distinct
> from equitable relief). With such an obvious referent [sic] for 'person entitled to
> recovery' in the plaintiff who sustains 'actual damages,' theory is immediately
> questionable in ignoring the 'actual damages' language so directly at hand and instead
> looking for 'a person entitled to recovery' in a separate part of the statute devoid of any
> mention either of recovery or of what might be recovered.

> Nor is it too strong to say that [Plaintiff] does ignore statutory language. When [Plaintiff]
> reads the statute to mean that the United States shall be liable to any adversely affected
> subject of an intentional or willful violation, without more, he treats willful action as the
> last fact necessary to make the Government "liable," and he is thus able to describe
> anyone to whom it is liable as entitled to the $1,000 guarantee. But this way of reading
> the statute simply pays no attention to the fact that the statute does not speak of liability
> (and consequent entitlement to recovery) in a freestanding, unqualified way, but in a
> limited way, by reference to enumerated damages. Id.

This Court had also enunciated that plaintiffs adversely affected by a willful and

intentional action of an agency must prove actual damages.  In Houston v. U.S. Dept. of

Treasury, the Court recognized that "[a]lthough the term 'actual damages' is not defined in the

Act, Congress, concerned about the drain on the treasury created by a rash of Privacy Act suits,

indicated its intention to limit 'actual damages' to 'out-of-pocket' expenses."  494 F.Supp. 24, 30

(D.D.C., 1979); see Rice v. U.S., 211 F.R.D. 10, (D.D.C., 2002)(stating that "[p]laintiffs will have to prove 'actual damages' in order to prevail in this case--and indeed, before they get to that point, they will have to prove that the [agency] 'acted in a manner which was intentional or willful'"). Since the Plaintiff has not shown actual damages, he is not entitled to any relief, including monetary in this case.

**A.    The Plaintiff is not Entitled to Injunctive Relief**

The Plaintiff seeks an order to compel the BOP to correct the PSF of "Greatest Severity." Complaint ¶ 12. Injunctive relief is available under the amendment provisions of the Act. However, injunctive relief is not available under the accuracy provisions of the Privacy Act. Riley v. Hawk, 108 F.3d 1396 (D.C.Cir. 1997). Because the ICF is specifically exempted from the amendment provisions of the Privacy Act, the Plaintiff is not entitled to the injunctive relief available through the Act. See, 28 C.F.R. § 16.97 (a) and (j).

**B.    The Plaintiff is not entitled to Prospective Relief**

The statute governing prospective relief in the Prison Litigation Reform Act (PLRA), codified at 18 U.S.C §3626(a)(1), puts substantial limits on injunctive and other "prospective relief." "Prospective relief" is defined in the statute as "all relief other than compensatory monetary damages." 18 U.S.C. 3626(g)(7). See Johnson v. Breeden, 280 F.3d 1308 (11th Cir. 2002) (punitive damages are a form of "prospective relief" restricted by the PLRA). Specifically, the Act provides, "prospective relief in any civil action with respect to 'prison conditions' (defined by the Supreme Court in Porter v. Nussle, 534 U.S. 516, 525 (2002), as "any aspect of prison life") shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief

14

unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  18 U.S.C. 3626(g)(7).

The court must make particularized findings of the federal right violated and the needs-narrowness-intrusiveness requirements under the act.  Id.  This mandatory requirement must be more than mimicking the language of the statute, as discussed in Cason v. Seckinger, 231 F.3d 777 (11th Cir. 2000); see also, Johnson v. Breeden, 280 F.3d 1308 (11th Cir. 2002).  And the statute further states, "[t]he court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."

In this case, clearly, the BOP has not violated any rights of the Plaintiff.  The Plaintiff does not have a right to a custody classification nor has he been in any way adversely affected by the custody classification.  Moreover, the BOP has exempted the ICF from the Privacy Act amendment and accuracy provisions of the Privacy Act.  Thus, the Plaintiff has failed to state a cause of action under the Privacy Act.

**III. TO THE EXTENT THAT PLAINTIFF SEEKS TO CHALLENGE HIS CONFINEMENT, HABEAS CORPUS IS HIS EXCLUSIVE REMEDY AND JURISDICTION DOES NOT LIE IN THIS DISTRICT**

The Plaintiff also asserts jurisdiction under,  28 U.S.C. § 2241.  This Court, however, would have no jurisdiction over any claims the Plaintiff raises under § 2241 (dealing with the district court's power to issue writs of habeas corpus).  The court located in the district in which the plaintiff is housed is the only court with jurisdiction over any habeas corpus claim of the Plaintiff.  A reading of the complaint reflects that the Plaintiff's allegations do not assert any valid claim under the habeas corpus statute.  Thus, the Plaintiff's claim under §2241 must be

15

dismissed with prejudice.

To the extent that Plaintiff's request for injunctive relief could be construed as an attack on the legality of his current conditions of confinement, his action could possibly be entertained as a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241.   The relevant language of the § 2241 habeas statute states:

> The writ of habeas corpus shall not extend to a prisoner unless . . . [ h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]   Title 28 U.S.C. § 2241(c)(3).

See Preiser v. Rodriquez, 411 U.S. 475 ( 1973) (holding that habeas corpus is the exclusive remedy for challenges to the fact or duration of confinement); Doughty v. U.S. Board of Parole, 782 F. Supp. 653, 656-57 (D.D.C. 1992);  see also Del Raine v. Carlson, 826 F.2d 698, 702 (7th Cir. 1987) (recognizing that the § 2241 habeas remedy applies to federal prisoners "seeking release not from prison but just from a more to a less confining form of incarceration."), citing, McCollum v. Miller, 695 F.2d 1044, 1046 (7th Cir. 1982);  Boudin v. Thomas, 732 F.2d 1107 (2d Cir. 1984) (recognizing that federal prisoners seeking an intra-institutional transfer from administrative detention to the general population are relegated to the § 2241 habeas scheme).

In Plaintiff's case, the specific condition of confinement he apparently wishes to challenge is his prisoner classification.  In other words, Plaintiff appears to allege that he is being unlawfully confined because of an improper classification.  It has been held in this circuit that habeas corpus, if available, is a prisoner's exclusive remedy and preempts declaratory and injunctive relief.  Chapman-Bey v. Thornburgh, 864 F.2d 804 (D.C. Cir. 1988) (en banc );  Doughty v. U.S. Board of Parole, 782 F. Supp. at 656-57.  Moreover, in Guerra v. Meese, 786 F.2d 414 (D.C. Cir. 1986), it was held that a district court may not entertain a habeas corpus

action unless it has personal jurisdiction over the custodian of the prisoner.  See Chapman-Bey at 810 (reaffirming that "the appropriate defendant in a habeas action is the custodian of the prisoner," and also holding that the "custodian" of a federal prisoner seeking release on parole is the warden of the prison in which he is confined); Doughty v. U.S. Board of Parole, 782 F. Supp. at 656-57.

   In this instance, Plaintiff's custodian is the warden of the facility in which he is housed in Elkton, Ohio.  This Court lacks personal jurisdiction over Plaintiff's warden, who is not even named in the complaint in this action.  These claims in the complaint must therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) and (6), insofar as Plaintiff can be said to be attacking his current conditions of confinement.

## CONCLUSION

      In light of all the foregoing  reasons, this Court should grant the Defendant's motion to dismiss or in the alternative for summary judgment.


Respectfully submitted,


                              _____
                              KENNETH L. WAINSTEIN, D.C. BAR # 451058
                              United States Attorney


                              _____
                              RUDOLPH C. CONTRERAS, D.C. Bar #  434122
                              Assistant United States Attorney


17

_____
BENTON G. PETERSON, WI. Bar #1029849
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 514-7238 514-8780 (Facsimile)
 **Benton.Peterson@usdoj.gov**

18

## CERTIFICATE OF SERVICE

**I certify that the foregoing  was served upon plaintiff, addressed to:**

**Andrew Rodriguez**

R38020-054
ELKTON FEDERAL CORRECTIONAL INSTITUTION
P.O. Box 10
Lisbon, OH 44432

**on this __20ᵗʰ  day of March, 2006.**

**_____/s/_____**
**BENTON G. PETERSON**
**Assistant United States Attorney**

19